```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TENNESSEE
                         WESTERN DIVISION
```
_____

**CLAUDIA BENSON,**               )
                                  )
    **Plaintiff,**              )
                                  )
v.                                )    No. 03-2088 Ma/V
                                  )
**PENSKE TRUCK LEASING CORP.,**   )
                                  )
    **Defendant.**              )
                                  )
_____

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S RENEWED
                   MOTION FOR SUMMARY JUDGMENT**
_____

Plaintiff Claudia Benson ("Benson") brings this diversity action for the death of her husband, James Benson, in an accident in which he was driving a tractor-trailer leased from Defendant Penske Truck Leasing Co., LLP ("Penske").[1] On February 4, 2005, Penske filed a "Renewed Motion for Summary Judgment Previously Filed on July 1, 2004." On February 18, 2005, Benson filed a response. For the following reasons, Defendant's motion is GRANTED in part and DENIED in part.

**I.  Jurisdiction**

Benson is a resident of Shelby County, Tennessee. (Am. Compl. at ¶ 1.) Penske is organized under the laws of Delaware and has its

---

[1] Although Plaintiff named "Penske Truck Leasing Corp." as the Defendant, Penske asserts that the proper party is "Penske Truck Leasing Co., LLP." Plaintiff had previously named as a defendant Freightliner, LLC, but that party was dismissed on November 7, 2003 based on the parties' stipulation.

principal place of business in Pennsylvania. (Id. at ¶ 5.) Benson seeks $10,000,000 in damages. (Id. at ¶ 66.) The court has jurisdiction under 28 U.S.C. § 1332, because the parties are of diverse citizenship and the amount in controversy exceeds $75,000.

**II.  Background**

On February 26, 2001, James Benson picked up a 1999 Freightliner semi-truck from a Penske location in Dallas, Texas. (Am. Compl. at ¶¶ 11-12.) His employer, Transportation Logistics, Inc. ("TLI"), had leased the truck. (Pl.'s Resp. at 9.) TLI had contracted with Penske to provide a replacement truck for Mr. Benson while TLI's truck was being repaired. (Def.'s Mem. in Supp., Ex. 7.) On March 2, 2001, James Benson was driving the rented truck on Interstate 40 in Madison County, Tennessee, when he lost control of the truck and ran off the roadway. (Am. Compl. at ¶¶ 14-15.) The truck burst into flames. (Id. at ¶ 16.) James Benson died in the accident. (Id. at ¶ 17.) He was survived by Benson and one child. (Id. at ¶ 18.)

Penske was notified of the accident on March 3, 2001. (Hansen Dep. at 11.) Kresten Hansen, a Corporate Litigation Examiner in Penske's Risk Management Department, took responsibility for the management of the accident on the next business day, Monday, March 5, 2001. (Id.) On March 9, 2001, Hansen received notice that the Environmental Protection Agency ("EPA") wanted a Penske representative at the accident scene by 10:30 a.m. on March 10 to

remove the truck from the scene. On March 10, 2001, Hansen made the decision to have the remains of the truck taken to a landfill, rather than preserved. (Id.)

Benson originally filed a complaint against Penske in the General Sessions Court of Shelby County, Tennessee, on February 26, 2002. (Pl.'s Resp. at 3.) Benson voluntarily non-suited the state court action within a year of filing it. (Id.) On February 12, 2003, "within weeks" of non-suiting the state court action, Benson "refiled the action in the Western District of Tennessee." (Id.) An Amended Complaint was filed on February 28, 2003.

According to Penske, which did not provide a copy of the state court complaint, that complaint "alleged only negligent repair and maintenance of the Penske unit." (Def.'s Mot. at 3.) The initial Complaint in this action alleges claims against Penske for negligence, failure to warn, breach of implied warranty, strict liability, and spoliation. (Compl. at 4-7.) Those claims are repeated in substantially the same form as Counts 1 to 5 of the Amended Complaint. (Am. Compl. at 4-8.)

On November 18, 2003, Benson filed a "Motion for Entry of Default Judgment as to Liability Against [Penske] for Spoliation of Evidence." In her motion, Benson argues that she is entitled to judgment because Penske disposed of the remains of Mr. Benson's truck. On May 5, 2004, Penske responded to Benson's motion for default judgment. On June 14, 2004, Benson filed a reply. On July

3

13, 2004, the court entered an order denying Benson's motion for default judgment. The court's order, however, imposed the lesser sanction of instructing the jury that it may infer that the evidence at issue was unfavorable to Penske if it finds that Penske's decision to dispose of the truck was made for an improper purpose. (Order Denying Pl.'s Mot. for Default J. at 13-14.)

### III. Summary Judgment Standard

The party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986). The moving party can meet this burden by pointing out to the court that the respondents, having had sufficient opportunity for discovery, have no evidence to support an essential element of their case. See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. A genuine issue for trial exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party opposing the motion must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v.

Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the nonmoving party must present "concrete evidence supporting its claims." Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989). The district court does not have the duty to search the record for such evidence. See InterRoyal Corp. v. Sponseller, 889 F.2d 108, 110-11 (6th Cir. 1989). Nonmovants have the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in their favor. See id.

**IV. Analysis**

Penske raises four issues in its motion for summary judgment: 1) Benson's negligence claim against Penske must be dismissed because it is subject to the exclusive-remedy doctrine of Tennessee's workers' compensation laws; 2) Benson's spoliation claim against Penske must be dismissed because Tennessee does not recognize a separate tort claim for spoliation of evidence; 3) Benson's product liability claims against Penske for failure to warn, breach of implied warranty, and strict liability must be dismissed because they are time-barred; and 4) Benson's negligence claim against Penske must be dismissed because Benson cannot prove that Penske was negligent. (Def.'s Mot. for Summ. J. at 1-3; Def.'s Mem. in Supp. at 4-5.)

**A. The Exclusive Remedy Doctrine**

5

The Tennessee worker's compensation statute, T.C.A. § 50-6-101, et seq., states that "the rights and remedies ... granted to an employee subject to the workers' compensation law on account of personal injury or death by accident ... shall exclude all other rights and remedies of such employee ... on account of such injury or death." T.C.A. § 50-6-108. Thus, any party that is defined as the employer of an individual by the workers' compensation statute is immune from tort liability for that individual's injuries sustained in the course of employment. But "T.C.A. § 50-6-112 saves an employee's tort cause of action for damages against some person other than [a statutory] employer." Campbell v. Dick Broadcasting Co., Inc. of Tennessee, 883 S.W.2d 604, 606 (Tenn. 1994).

A statutory employer is "any party who may be liable for workers' compensation benefits pursuant to T.C.A. § 50-6-113(a)." Id. T.C.A. § 50-6-113(a) states:

> "[a] principal, or intermediate contractor, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of the subcontractors of the principal, intermediate contractor, or subcontractor and engaged upon the subject matter of the contract to the same extent as the immediate employer."

Thus, a third-party that is not the immediate employer of an employee may be a statutory employer of that employee and immune from a suit for personal injury if the employee's immediate employer was a subcontractor of the third-party.

Penske contends that it was Mr. Benson's statutory employer under T.C.A. § 50-6-113(a). (Def.'s Mem. in Supp. at 14-15.) For

6

Penske's contention to be true, TLI, Mr. Benson's employer, must have been Penske's subcontractor. There is no evidence, however, that Penske hired TLI to do anything. To the contrary, TLI hired Penske to provide a replacement truck for Mr. Benson while TLI's truck was being repaired. (Def.'s Mem. in Supp., Ex. 7.) According to Penske itself, "Mr. Benson was not on or about Penske's business when he crashed the Freightliner truck...." (Def.'s Resp. to Pl.'s Interrogatory No. 12.) If Mr. Benson was not "on or about Penske's business", his employer TLI was not Penske's subcontractor.

**B. Spoliation of Evidence**

Count V of Benson's Amended Complaint is an independent tort claim for spoliation of evidence. The parties agree that Tennessee courts have never recognized an independent tort of spoliation. (Def.'s Mem. in Supp. at 12; Pl.'s Resp. at 7.) Nevertheless, Benson argues that Tennessee courts would recognize an independent tort of spoliation if presented with the issue. (Pl.'s Resp. at 7.)

Spoliation claims can take two forms: first-party spoliation occurs when a defendant in a law-suit destroys evidence of value to the plaintiff; third-party spoliation occurs when a third party destroys evidence that could have been used by a plaintiff against a different defendant in a separate suit. Gribben v. Wal-Mart Stores, Inc., 824 N.E.2d 349, 350 (Ind. 2005). A number of state supreme courts have recently addressed the issue of whether an independent tort of spoliation should be recognized. The Indiana

7

Supreme Court, for example, has held that:

> if an alleged tortfeasor negligently or intentionally destroys or discards evidence that is relevant to a tort action, the plaintiff in the tort action does not have an additional independent cognizable claim against the tortfeasor for spoliation of evidence under Indiana law.

Id. at 355. In reaching its conclusion, the Court summarized the existing case law on the tort of spoliation:

> Several jurisdictions, including West Virginia, Alaska, Montana, the District of Columbia, Illinois, New Mexico, and Ohio, recognize evidence spoliation as a cognizable tort. Hannah v. Heeter, 584 S.E.2d 560 (W. Va. 2003) (granting stand-alone tort status for intentional spoliation and for some third-party negligent spoliation, but rejecting first-party negligent spoliation as a stand-alone tort); Nichols v. State Farm Fire & Cas. Co., 6 P.3d 300 (Alaska 2000) (acknowledging independent tort claims for first-party and third-party intentional spoliation but rejecting tort status for first-party negligent spoliation); Oliver v. Stimson Lumber Co., 993 P.2d 11 (Mont. 1999) (recognizing tort action for negligent or intentional third-party spoliation, but not for first-party spoliation); Holmes v. Amerex Rent-A-Car, 180 F.3d 294 (D.C. Cir. 1999) (recognizing tort for negligent third-party spoliation); Boyd v. Travelers Ins. Co., 652 N.E.2d 267 (Ill. 1995) (permitting separate tort claim for negligent spoliation against principal defendant's liability insurer); Coleman v. Eddy Potash, Inc., 905 P.2d 185 (N.M. 1995) (recognizing tort liability for intentional [third-party] spoliation, but not one for negligent spoliation); Smith v. Howard Johnson Co., 615 N.E.2d 1037 (Ohio 1993) (recognizing tort action for intentional first-party and third-party spoliation).
>
> But several other jurisdictions considering the issue, among them Florida, Mississippi, Arkansas, California, Iowa, Texas, Alabama, Georgia, Kansas, and Arizona have rejected spoliation as an independent tort. Martino v. Wal-Mart Stores, Inc., 835 So.2d 1251 (Fla. Dist. Ct. App. 2003) (rejecting tort action for first party spoliation); Richardson v. Sara Lee Corp., 847 So.2d 821 (Miss. 2003) (rejecting negligent spoliation as an independent tort); Dowdle Butane Gas Co. v. Moore, 831

      So.2d 1124 (Miss. 2002) (rejecting independent cause of action for intentional first-party or third-party spoliation); Rosenblit v. Zimmerman, 766 A.2d 749 (N.J. 2001) (rejecting spoliation as a new tort but permitting similar remedy upon theory of fraudulent concealment); Goff v. Harold Ives Trucking Co., Inc., 27 S.W.3d 387 (Ark. 2000) (rejecting tort of first-party intentional spoliation); Temple Cmty. Hosp. v. Superior Court, 976 P.2d 223 (Cal. 1999) (rejecting tort of intentional third-party spoliation); Meyn v. State, 594 N.W.2d 31 (Iowa 1999) (rejecting tort claim for third-party negligent spoliation); Cedars-Sinai Med. Ctr. v. Superior Court, 954 P.2d 511 (Cal. 1998) (rejecting tort remedy for intentional first-party spoliation); Trevino v. Ortega, 969 S.W.2d 950 (Tex. 1998) (refusing to recognize intentional or negligent spoliation as an independent tort); Christian v. Kenneth Chandler Constr. Co., Inc., 658 So.2d 408 (Ala. 1995) (declining to recognize tort action for first party spoliation); Gardner v. Blackston, 365 S.E.2d 545 (Ga. Ct. App. 1988) (refusing claim for first party spoliation); Koplin v. Rosel Well Perforators, Inc., 734 P.2d 1177 (Kan. 1987) (generally rejecting tort of spoliation of evidence); La Raia v. Superior Court, 722 P.2d 286 (Ariz. 1986) (declining to recognize new tort of intentional spoliation against first party).

Id. at 353-54.

    Count 5 of Benson's complaint is a claim of first-party spoliation against Penske. Only Ohio and Alaska recognize an independent tort of first-party spoliation when it is brought in conjunction with an underlying claim. Id. Claims for first-party spoliation are disfavored because sanctions for the spoliation generally can remedy any harm a plaintiff suffers by a defendant's actions. Id. at 355. This case presents such a situation. The court has imposed on Penske an adverse inference sanction: the jury will be instructed that, if it finds that Penske disposed of the truck remains for an improper purpose, the jury may infer that the truck

9

remains were unfavorable to Penske. (Order Denying Pl.'s Mot. for Default J. at 13-14.) Under these circumstances, the court concludes that Tennessee would follow the majority of other states that do not recognize tort claims of first-party spoliation.

Benson argues that, even if the court finds that Tennessee would not recognize an independent tort of spoliation, she has an ordinary negligence claim based on Penske's destruction of the evidence. (Pl.'s Resp. at 7.) To recover on a claim for negligence in Tennessee a party must prove that it has suffered an injury or loss. Bradshaw v. Daniel, 854 S.W.2d 865, 869 (Tenn. 1993). Benson argues that Penske's spoliation "has caused damage to the Plaintiff because the loss of the evidence has rendered it impossible for anyone to determine whether a defective condition or mechanical failure caused the accident and/or the fire which killed Mr. Benson." (Pl.'s Resp. at 8.)

Benson would be correct in asserting that Penske's spoliation resulted in a loss if Benson had been forced to abandon her negligence claim. Benson has not abandoned her claim. Further, Benson's assertion that no one can "determine whether a defective condition or mechanical failure caused the accident" ignores the sanction against Penske. If the jury concludes that Penske destroyed the truck remains for an improper reason, the jury may infer that the damaged truck remains would have shown that the accident was caused by a "defective condition or mechanical

10

failure" of the truck. Accordingly, Benson's claim for spoliation, Count 5 of her Amended Complaint, is dismissed.

### C. Statute of Limitations

Penske contends that Counts 2, 3, and 4 of Benson's Amended Complaint are time-barred.[2] These counts allege failure to warn, breach of implied warranty and strict liability, respectively, and arise under the law of product liability. The same claims appeared in their current form in the initial Complaint in this action.

The accident giving rise to this case occurred on March 2, 2001. The initial Complaint was filed on February 12, 2003. In Tennessee, product liability claims must be brought within 1 year of a plaintiff's injury. T.C.A. § 29-28-103; T.C.A. § 28-3-104. Thus, on their face, the product liability claims appear time-barred. Benson, however, argues that her claims are saved by the Tennessee savings statute because she originally "filed an action in general sessions court on February 26, 2002, non-suited the action less than a year later, and refiled the action in the Western District of Tennessee only a few weeks after non-suiting the general sessions action." (Pl.'s Resp. at 3.)

The Tennessee savings statute, T.C.A. § 28-1-105, states:

> (a) If the action is commenced within the time limited by a rule or statute of limitation, but the judgment or decree is rendered against the plaintiff upon any ground not concluding the plaintiff's right of action ... the

---

[2] Penske also argues that Benson's spoliation claim is time-barred. The court has dismissed that claim.

11

>   plaintiff ... may ... commence a new action within one
>   (1) year after the reversal or arrest. . . .

The savings statute is a substantive rule of law that a federal court must apply in diversity cases. Via v. General Elec. Co., 799 F.Supp. 837, 838-39 (W.D. Tenn. 1992) (citing Agricultural Services Ass'n, Inc. v. Ferry-Morse Seed Co. Inc., 551 F.2d 1057, 1063 (6th Cir. 1977)). The Tennessee savings statute applies to a plaintiff's "voluntary dismissal or non-suit" of her case. In re AMC Mortg. Co., Inc., 213 F.3d 917, 920 (6th Cir. 2000). "[T]he savings statute applies when a wrongful death action is both filed and voluntarily dismissed before the running of the statute of limitations." Olsmith v. Yellow Freight Systems, Inc., 957 F.Supp. 128, 129-30 (M.D. Tenn. 1997). The original state court suit was filed within a year of Mr. Benson's death, and this suit was filed "only a few weeks after" the state court suit was non-suited. Consequently, the Tennessee savings statute appears to save Benson's product liability claims. Penske, however, replies that the savings statute is inapplicable to the product liability claims because the only claim brought against Penske in the original suit in general sessions court was for "negligent repair and maintenance."

"Tennessee law strongly favors the resolution of all disputes on their merits, [consequently,] the saving statute is to be given a broad and liberal construction in order to achieve this goal." Henley v. Cobb, 916 S.W.2d 915, 916 (Tenn. 1996). To determine

whether the savings statute is applicable, the court must ascertain whether the defendant had notice. Foster v. St. Joseph Hosp., 158 S.W.3d 418, 422 (Tenn. Ct. App. 2004). "Thus, the savings statute is only applicable when the original complaint and the new complaint allege substantially the same cause of action. . . . It is not necessary that the two complaints be identical, only that the allegations arise out of the same transaction or occurrence." Id.; see also Energy Sav. Prods., Inc. v. Carney, 737 S.W.2d 783 (Tenn. Ct. App. 1987) (holding that the savings statute protected a new claim in the second complaint because the claim arose out of the same conduct, transaction, or occurrence alleged in the original action).

In an analogous case, Moore v. Fields, 464 F.2d 549 (6th Cir. 1972), a plaintiff filed suit in state court claiming assault and battery by the defendant. The suit was dismissed for failure to prosecute but was re-filed in federal court with the addition of a § 1983 claim. The federal suit was filed after the statute of limitations had run on the § 1983 claim, but within one year of the original suit's dismissal. The Sixth Circuit found that the § 1983 claim was saved by the Tennessee savings statute:

> The Savings Statute is remedial and should be construed liberally to effectuate its purpose. This purpose is satisfied if the dismissed action gave the defendant fair notice of the nature and extent of plaintiff's claim asserted against him. The facts alleged in support of a claim for relief in both the state and federal complaints were identical. Fields thus was put on notice of Moore's claim against him by reason of Moore's filing of the

13

> complaint in the Law Court of Sullivan County within one year of the assertedly actionable conduct. Accordingly, Moore's action instituted in District Court within one year following dismissal of that action was timely by operation of T.C.A. § 28-106.

Id. at 550-51.

In this case, the parties agree that both suits arise out of Mr. Benson's death on March 2, 2001. Benson's product liability claims are based on Penske's "defective and unreasonable dangerous servicing, leasing, inspection, marketing and/or distribution" of Mr. Benson's truck. (Am. Compl. at ¶¶ 37, 43, 52.) Benson's negligence claim is similarly based on the claim that Penske "carelessly serviced, leased, inspected marketed and/or distributed" Mr. Benson's truck. (Am. Compl. at ¶ 28.) Both the negligence and product liability claims arise out of the same transaction or occurrence: Mr. Benson's accident and Penske's treatment of the truck prior to the accident. Benson's original claim for negligent repair and maintenance was adequate to place Penske on notice that it might also have to defend product liability claims based on its handling of Mr. Benson's truck before it was leased to TLI for him to operate.

Penske argues that the product liability claims arise from a different transaction and occurrence because they involve evidence about the design and manufacture of the truck, while the negligent repair and maintenance claims simply involve evidence of how Penske treated the truck after it was manufactured. (Pl.'s Mem. in Supp.

14

at 10.) Benson's product liability claims, however, are based on Penske's allegedly "defective and unreasonably dangerous servicing, leasing, inspection, marketing and/or distribution" of Mr. Benson's truck. (Am. Compl. at ¶¶ 37, 43, 52.) Benson's Amended Complaint makes no mention of claims based on the design or manufacture of Mr. Benson's truck. Accordingly, Penske's motion for summary judgment on Benson's product liability claims is denied.

### D. Negligence Claim

The "Contentions" section of Penske's memorandum in support of its motion for summary judgment states that Benson's "development of proof in the matter does not support a finding of [a] negligent act or omission against Penske." (Def.'s Mem. in Supp. at 5.) The "Law and Argument" portion of the pleading, however, does not present any law or arguments supporing this contention. Accordingly, Penske's motion to dismiss Benson's negligence claim is denied.[3]

---

[3] Benson does not need to "develop" any proof of Penske's negligence in the maintenance of Mr. Benson's leased truck because the jury may infer such evidence exists if it finds that Penske's spoliation of the truck remains was for an improper purpose.

15

**V. Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment on Plaintiff's negligence and product liability claims is DENIED. Defendant's motion for summary judgment on Plaintiff's spoliation claim is GRANTED and Count 5 of Plaintiff's Amended Complaint is DISMISSED.

So ordered this 30th day of March 2006.

s/Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE