```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TENNESSEE
                         WESTERN DIVISION
_____

CLAUDIA BENSON,                   )
                                  )
     Plaintiff,                   )
                                  )
v.                                )        No. 03-2088 Ma/V
                                  )
PENSKE TRUCK LEASING CORP.,       )
                                  )
     Defendant.                   )
                                  )
_____

      ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
   SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT AS TO BREACH OF IMPLIED
    WARRANTIES, DUTY TO WARN, STRICT LIABILITY AND PUNITIVE DAMAGES
                             CLAIMS
_____
```

Plaintiff Claudia Benson ("Benson") brings this suit for the death of her husband, James Benson, in an accident in which he was driving a tractor-trailer leased from Defendant Penske Truck Leasing Co., LLP ("Penske").[1] Benson raises several claims against Penske, including negligence, strict liability, failure to warn, breach of implied warranty of merchantability, and wrongful death. Benson also seeks punitive damages. (Am. Compl. at 64.) On February 4, 2005, Penske filed a "Supplemental Motion for Summary Judgment as [to] Breach of Implied Warranties, Duty to [Warn], Strict Liability, and Punitive Damages Claims." On February 18, 2005,

---

[1] Although Plaintiff named "Penske Truck Leasing Corp." as the Defendant, Penske asserts that the proper party is "Penske Truck Leasing Co., LLP." Plaintiff had previously named as a defendant Freightliner, LLC, but that party was dismissed on November 7, 2003 based on the parties' stipulation.

Benson filed a response. For the following reasons, Defendant's motion is GRANTED in part and DENIED in part.

## I. Jurisdiction

Benson is a resident of Shelby County, Tennessee. (Am. Compl. at ¶ 1.) Penske is organized under the laws of Delaware and has its principal place of business in Pennsylvania. (Id. at ¶ 5.) Benson seeks $10,000,000 in damages. (Id. at ¶ 66.) The court has jurisdiction under 28 U.S.C. § 1332, because the parties are of diverse citizenship and the amount in controversy exceeds $75,000.

## II. Background

On February 26, 2001, James Benson picked up a 1999 Freightliner semi-truck from a Penske location in Dallas, Texas. (Am. Compl. at ¶¶ 11-12.) His employer, Transportation Logistics, Inc. ("TLI"), had leased the truck. (Pl.'s Resp. at 9.) TLI had contracted with Penske to provide a replacement truck for Mr. Benson while TLI's truck was being repaired. (Def.'s Mem. in Supp., Ex. 7.) On March 2, 2001, James Benson was driving the rented truck on Interstate 40 in Madison County, Tennessee, when he lost control of the truck and ran off the roadway. (Am. Compl. at ¶¶ 14-15.) The truck burst into flames. (Id. at ¶ 16.) James Benson died in the accident. (Id. at ¶ 17.) He was survived by Benson and one child. (Id. at ¶ 18.) Plaintiff alleges that James Benson "lost his ability to control the truck due to a defect in the mechanical aspects of the truck." (Id. at ¶ 15.)

Penske was notified of the accident on March 3, 2001. (Hansen Dep. at 11.) Kresten Hansen, a Corporate Litigation Examiner in Penske's Risk Management Department, took responsibility for the management of the accident on the next business day, Monday, March 5, 2001. (Id.) On March 9, 2001, Hansen received notice that the Environmental Protection Agency ("EPA") wanted a Penske representative at the accident scene by 10:30 a.m. on March 10 to remove the truck from the scene. On March 10, 2001, Hansen made the decision to have the remains of the truck taken to a landfill rather than preserved. (Id.)

On November 18, 2003, Benson filed a "Motion for Entry of Default Judgment as to Liability Against [Penske] for Spoliation of Evidence." In her motion, Benson argued that she was entitled to judgment because Penske had disposed of the remains of Mr. Benson's truck. On May 5, 2004, Penske responded to Benson's motion for default judgment. On June 14, 2004, Benson filed a reply. On July 13, 2004, the court entered an order denying Benson's motion for default judgment. The court's order, however, imposed the lesser sanction of instructing the jury that it might infer that the evidence at issue was unfavorable to Penske if it finds that Penske's decision to dispose of the truck was made for an improper purpose. (Order Denying Pl.'s Mot. for Default J. at 13-14.)

### III. Summary Judgment Standard

The party moving for summary judgment "bears the burden of

clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986). The moving party can meet this burden by pointing out to the court that the respondents, having had sufficient opportunity for discovery, have no evidence to support an essential element of their case. See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. A genuine issue for trial exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party opposing the motion must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the nonmoving party must present "concrete evidence supporting its claims." Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989). The district court does not have the duty to search the record for such evidence. See InterRoyal Corp. v. Sponseller, 889 F.2d 108, 110-11 (6th Cir. 1989). Nonmovants have the duty to point out specific

evidence in the record that would be sufficient to justify a jury decision in their favor. See id.

**IV. Analysis**

In its motion for summary judgment, Penske argues that Benson has presented no proof in support of her product liability claims for breach of implied warranties, duty to warn, and strict liability. (Def.'s Mot. at 1.) Penske also moves for summary judgment on Benson's claim for punitive damages. (Id. at 2.)

**A. Product Liability Claims: Breach of Implied Warranties, Strict Liability**

Benson's breach of implied warranties and strict liability claims are product liability actions governed by the Tennessee Products Liability Act ("TPLA"), T.C.A. §§ 29-28-101 et seq.[2] The TPLA states that:

> A manufacturer or seller of a product shall not be liable for any injury to a person or property caused by the product unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller.

---

[2] T.C.A. 29-28-102(6) states:

"Product liability action" for purposes of this chapter includes all actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product. "Product liability action" includes, but is not limited to, all actions based upon the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent. . . .

In general, the TPLA applies to a lessor of a product just as it would to a seller of that product. Baker v. Promark Products West, Inc., 692 S.W.2d 844, 847 (Tenn. 1985). Consequently, all references in this order to a "seller" apply to Penske although Penske leased the truck.

5

T.C.A. § 29-28-101; see also Roysdon v. R.J. Reynolds Tobacco Co., 849 F.2d 230, 235-36 (6th Cir. 1988) (holding that, to recover on a product liability claim, a plaintiff in Tennessee must establish that a product was either defective or unreasonably dangerous at the time the product left the defendant's control). Thus, for Penske to prevail on its summary judgment motion, it must establish the non-existence of a genuine issue of material fact about whether the truck Mr. Benson rented was "in a defective condition" or "unreasonably dangerous."

Tennessee law defines a defective condition as "a condition of a product that renders it unsafe for normal or anticipatable handling and consumption." Id. at 236 (citing T.C.A. § 29-28-102(2)). "A product is unreasonably dangerous if it is 'dangerous to an extent beyond that which could be contemplated by the ordinary consumer who purchases it with the ordinary knowledge common to the community as to its characteristics.' T.C.A. § 29-28-102(8). Ordinary knowledge can be determined from the 'knowledge of the ordinary consumers of the products.'" Roysdon, 849 F.2d at 236 (citing Pemberton v. American Distilled Spirits Co., 664 S.W.2d 690, 692 (Tenn. 1984)). "[P]roof of a malfunction alone [establishes liability] under the strict liability and warranty theories in a products liability case." Browder v. Pettigrew, 541 S.W.2d 402, at 404 (Tenn. 1976).

Penske argues that summary judgment is appropriate because

6

Benson has presented no evidence to support her products liability claims other than the accident itself. (Pl.'s Mem. in Supp. at 14.) Penske is correct that "[i]t is not enough to show that the product caused the plaintiff's injury or was involved in it. The plaintiff must show that there was something wrong with the product." Tatum v. Cordis Corp., 758 F.Supp. 457, 460-61 (M.D. Tenn. 1991). Penske, however, ignores the adverse inference sanction that the court has imposed. If the jury determines that Penske destroyed the truck remains for an improper purpose, the jury may conclude that the truck remains would have shown that a malfunction caused Mr. Benson's death. Nothing more is required to find liability under the strict liability and breach of implied warranty theories. See Browder, 541 S.W.2d at 404 (Tenn. 1976).

**B. Product Liability Claim: Duty to Warn**

If a product is in a defective or unreasonably dangerous condition at the time it leaves a seller's possession, the law imposes on the seller a duty to warn a buyer of the condition. Goode v. Tamko Asphalt Products, Inc., 783 S.W.2d 184, 187 (Tenn. 1989) (citing T.C.A. § 29-28-105(a)). If the buyer knew or should have known of the defective or unreasonably dangerous condition, the seller has no duty to warn. Trimble v. Irwin, 441 S.W.2d 818, 821 (Tenn. Ct. App. 1968). Penske argues that it did not have a duty to warn Mr. Benson of any defective or unreasonably dangerous condition of the truck because 1) Mr. Benson was a learned

intermediary or sophisticated user; and 2) Mr. Benson had actual knowledge of the hazard. (Pl.'s Mem. in Supp. at 11-12.)

Penske claims that because Mr. Benson was a "commercial driver with [] multi-years experience as an over the road driver" he qualifies as a sophisticated user or learned intermediary to whom Penske did not owe a duty to warn. (Id. at 11.) Penske's argument is unavailing. In some jurisdictions the status of a buyer as a learned intermediary or sophisticated user obviates the seller's duty to warn. See Whitehead v. Dycho Co., Inc., 1987 WL 27044, at 5 (Tenn. Ct. App. 1987). Tennessee, however, "has adopted neither the sophisticated user nor learned intermediary doctrine."[3] McAbee v. Overhead Door Corp., 875 F.2d 865 (table), 1989 WL 40145, at *2 (6th Cir. 1989).

Penske also argues that it did not owe Mr. Benson a duty to warn because he knew of the truck's allegedly defective condition. (Def.'s Mem. in Supp. at 12.) Penske claims that Mr. Benson told his wife and his friend Mr. Rogers that he was dissatisfied with the truck's "handling."[4] (Id. at 11.) Whether Mr. Benson's dissatisfaction with the truck's handling shows that he had knowledge of the truck's allegedly defective condition is a question for the jury. The court cannot conclude as a matter of law

---

[3] The learned intermediary doctrine has been adopted in Tennessee when the allegedly defective product is a medical device or prescription drug. See Pittman v. Upjohn Co., 890 S.W.2d 425, 429 (Tenn. 1994).

[4] Penske identifies no evidence supporting its claim that Mr. Benson told his wife and Mr. Rogers that he was dissatisfied with the truck's handling.

that Mr. Benson's dissatisfaction with the truck's handling put him on notice that the truck was defective or unreasonably dangerous.

### C. Punitive Damages

The extent of Penske's argument in favor of summary judgment on the issue of punitive damages is that "the proof in this case does not demonstrate that Penske acted in any manner that was willful, wanton or grossly negligent that would give rise to a claim for punitive damages." Benson's response is limited to the statement that "the evidence is sufficient for the jury to find that the Penske truck operated by Mr. Benson was defective or unreasonably dangerous, and further that Penske acted in a wilful, wanton and/or grossly negligent manner entitling Plaintiff to punitive damages." Benson does not identify what evidence is "sufficient" for the jury to determine that Penske acted in a manner that entitles Benson to punitive damages.

In Tennessee, a court may award punitive damages only if it finds that a defendant has acted intentionally, fraudulently, maliciously, or recklessly. Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 (Tenn. 1992). Benson has not identified any evidence in the record showing that intentional, fraudulent, malicious or reckless acts by Penske led to Mr. Benson's accident. The court has found no such evidence in the record. The record contains little or no evidence about Penske's actions before Mr. Benson's accident. Consequently, Penske's motion for summary judgment on Benson's

claim for punitive damages is granted.

## V. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment on Plaintiff's product liability claims under theories of strict liability, breach of implied warranties, and failure to warn is DENIED. Defendant's motion for summary judgment on Plaintiff's punitive damages claim is GRANTED and Plaintiff's claim for punitive damages is DISMISSED.

So ordered this 30th day of March 2006.

s/Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE