IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| **CLAUDIA BENSON,** | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    No. 03-2088 Ma/V |
| | ) |
| **PENSKE TRUCK LEASING CORP.,** | ) |
| | ) |
|     Defendant. | ) |
| | ) |

_____

**ORDER DENYING DEFENDANT'S RENEWED MOTION PURSUANT TO RULE 60(b) FOR RELIEF FROM ORDER IMPOSING SPOLIATION ADVERSE INFERENCE SANCTION**
_____

Plaintiff Claudia Benson ("Benson") brings suit for the death of her husband, James Benson ("Mr. Benson"), in an accident involving a tractor-trailer leased from Defendant Penske Truck Leasing Co., LLP ("Penske").[1] Benson raises several claims against Penske, including negligence, strict liability, failure to warn, breach of implied warranty of merchantability, and wrongful death. (Am. Compl. at ¶¶ 4-8.) Before the court is Penske's "Renewed Motion Pursuant to Rule 60(b) for Relief From Order Imposing Spoliation Adverse Inference Sanction," filed February 4, 2005. Benson responded on February 22, 2005. For the following reasons,

---

[1] Although Plaintiff named "Penske Truck Leasing Corp." as the Defendant, Penske asserts that the proper party is "Penske Truck Leasing Co., LLP." Plaintiff had previously named as a defendant Freightliner, LLC, but that party was dismissed from the case on November 7, 2003, based on the parties' stipulation.

Defendant's motion for relief is DENIED.

## I. Jurisdiction

Plaintiff is a resident of Shelby County, Tennessee. (Am. Compl. at ¶ 1.) Penske is organized under the laws of Delaware and has its principal place of business in Pennsylvania. (Id. at ¶ 5.) Penske is licensed to do business in Tennessee and has a registered agent for service of process in Nashville, Tennessee. (Id. at ¶ 7.) The court has jurisdiction under 28 U.S.C. § 1332, because the parties are of diverse citizenship and the amount in controversy exceeds $75,000.

## II. Background

On February 26, 2001, Mr. Benson picked up a 1999 Freightliner semi truck from a Penske location in Dallas, Texas. (Am. Compl. at ¶¶ 11-12.) On March 2, 2001, Mr. Benson was driving the rented truck on Interstate 40 in Madison County, Tennessee when he lost control of the truck and ran off the roadway. (Id. at ¶¶ 14-15.) The truck burst into flames. (Id. at ¶ 16.) Mr. Benson died in the accident. (Id. at ¶ 17.) He was survived by plaintiff Benson and one child. (Id. at ¶ 18.) Plaintiff alleges that Mr. Benson "lost his ability to control the truck due to a defect in the mechanical aspects of the truck." (Id. at ¶ 15.) Plaintiff also alleges that the fire "was a direct and proximate result of the defectively designed fuel system" of the truck. (Id. at ¶ 16.)

Penske was notified of the accident on March 3, 2001. (Hansen

Dep. at 11.) Kresten Hansen, a Corporate Litigation Examiner in Penske's Risk Management Department, took responsibility for the management of the accident on Monday, March 5, 2001. On March 10, 2001, Hansen made the decision to have the remains of the truck taken to a landfill rather than preserved. At the time, Hansen anticipated that litigation would arise from the accident. (Id. at 12, 33-34, 42-43.) The subcontractor hired to remove the truck and take it to a landfill on March 11, 2001, was Sammy Spann. (Spann Aff. at ¶ 2.)

On November 18, 2003, Benson filed a "Motion for Entry of Default Judgment as to Liability Against [Penske] for Spoliation of Evidence," in which she argued that she is entitled to judgment because Penske directed that the truck involved in the accident be taken to a landfill eight days after the accident. On May 5, 2004, after receiving an extension of time, Penske responded to Benson's motion. On June 14, 2004, Benson filed a reply. On July 13, 2004, an order was entered denying Benson's motion for default judgment. The court's order, however, imposed the lesser sanction of instructing the jury that it could infer that the evidence at issue was unfavorable to Penske if it found that Penske's decision to dispose of the truck was made for an improper purpose. (Order Denying Pl.'s Mot. for Default J. at 13-14.)

After an unsuccessful mediation on August 19, 2004, Penske attempted to identify the location of the truck remains. (Def.'s

Original Mot. for Relief from Spoliation Sanctions at 6.) Five days later, on August 24, 2004, Penske discovered that a portion of the truck remains had not been sent to a landfill, but had been stored at Spann's salvage yard in Dickson, Tennessee.[2] (Id.) Benson's and Penske's expert witnesses testified at their depositions that the recovered truck remains are not extensive enough to permit accident reconstruction analyses that would allow the parties to identify the cause of the accident or the ensuing fire. (Blake Wood Dep. at 36-37; Donald Phillips Dep. at 220.)

The parties dispute whether Benson was aware that a portion of the truck remains had been preserved in Spann's salvage yard before Benson filed her motion for default judgment on November 18, 2003. Spann, in an affidavit signed on September 1, 2004, states:

> 4. Within twelve months of the clean up and debris removal service I provided for Glenn James Wrecker Service [on March 11, 2001], I received a call from an attorney who indicated that Ms. Benson, the surviving spouse of the deceased driver, was his client. I reported to that attorney at that time that parts and components of the Penske truck were at my salvage yard in Dickson.
>
> 5. Within the last twelve to fourteen months, I have been contacted by another attorney who reportedly represented Ms. Benson and I likewise told that attorney that components of the Penske truck were at my salvage yard. That attorney ultimately visited my salvage yard in Dickson, with me meeting him at that location, and various components of the Penske truck were pointed out to him.

---

[2] During his cleanup of the accident site on March 11, 2001, Spann had carted the truck remains to a scrap metal facility in Nashville. (Spann Aff. at ¶ 2.) Because the cleanup was not finished until late in the day, Spann carted the last load of truck remains to his salvage yard in Dickson County, where they remained. (Id. at ¶ 3.)

(Spann Aff. at ¶¶ 4-5.)[3] In his deposition, however, Spann states that he does not recall whether the attorneys who contacted him stated that they represented Benson. (Spann Dep. at 50.) According to Spann, he assumed that the attorneys represented Benson because an attorney working for Penske had told him that no Penske attorney had contacted him or visited his salvage yard during the relevant time period. (Id. at 42-43, 49-50.)

**III. Penske's Motion For Relief**

In its order imposing sanctions on Penske, the court found that, although Penske was aware that litigation was likely to arise, Penske intentionally disposed of the remains of Mr. Benson's truck. (Order Denying Pl.'s Mot. for Default J. and Imposing Alt. Sanction for Spoliation at 9-11.) Penske argues that the court should reconsider the imposition of sanctions because 1) the truck remains that Penske believed had been destroyed still exist, and 2) Benson brought the motion for default judgment in bad faith.[4]

The discovery that a portion of the truck remains were preserved in Spann's salvage yard does obviate the spoliation sanctions imposed on Penske. In its order imposing sanctions, the

---

[3] Because Spann cannot read or write, his affidavit was prepared by an attorney working for Penske. (Spann Dep. 65.)

[4] Penske's motion asks for relief under Fed. R. Civ. P. 60(b). Rule 60(b) only applies to reconsideration of judgments, orders or proceedings that are "final." Motions for reconsideration of "interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief as justice requires." Notes of Advisory Committee on Rules, Fed. R. Civ. P. 60(b).

5

court stated:

> Plaintiff has suffered some prejudice inherent in the lack of a meaningful opportunity to inspect the wreckage. The disposal of the truck eight days after the accident precluded her from retaining experts to inspect the wreckage in an attempt to determine the cause of the accident or the cause of the fire.

(Id. at 13.) Benson's and Penske's expert witnesses testified at their depositions that the recovered truck remains are not extensive enough to permit accident reconstruction analyses that would allow the parties to identify the cause of the accident or the ensuing fire. (Blake Wood Dep. at 36-37; Donald Phillips Dep. at 220.) Thus, despite the discovery of a portion of the truck remains, Benson still has not had a meaningful opportunity to inspect the truck remains and continues to be prejudiced by their destruction.

Penske claims that Benson brought her motion for default judgment in bad faith because she was aware that a portion of the truck remains had been preserved at Spann's salvage yard when she filed her motion, but hid this fact from Penske and the court. Penske's claim is based on Spann's affidavit in which Spann avers that he had informed Benson's attorneys of the existence of the truck remains at his salvage yard on two occassions before Benson filed her motion for default judgment on November 18, 2003. Spann's deposition testimony, however, shows that Spann does not recall whether the attorneys who contacted him told him who they represented. (Spann Dep. at 50.) Spann has stated that the

6

averments in his affidavit were based on his assumption that the attorneys represented Benson because Penske's lawyers told Spann that the lawyers who contacted him were not representatives of Penske.[5] (Id. at 42-43, 49-50.) Given Spann's deposition testimony, the court cannot conclude from Spann's affidavit that Benson filed her motion for default judgment in bad faith.

Penske also supports its argument that Benson's motion for default judgment was filed in bad faith with a quote from Benson's response to Penske's "Motion to Modify Scheduling Order by Extending Discovery Deadline and for Leave to Designate Additional Experts," filed on November 30, 2004. In her response to that motion, filed on December 20, 2004, Benson stated that "shortly after assuming representation of the Plaintiff, Plaintiff's present counsel did believe that information had been uncovered which suggested that certain remains of the truck were located in Dickson, Tennessee." Penske argues that this quotation is evidence that Benson was aware of the existence of the truck remains in Spann's salvage yard before she filed her motion for default judgment.

---

[5] The following exchange took place during Spann's deposition:

Penske's Attorney: Do you specifically remember [the attorneys who contacted you] saying, "I represent Ms. Benson?"

Spann: Well, I brought that question up to the [Penske] attorney that asked me the question. I said, "Well, if it wasn't you, somebody from the truck company calling me, it had to be them.["] Because what other attorney it would be, that's what my statement was.

>Penske, however, fails to quote the sentence in context:
>
>>shortly after assuming representation of the Plaintiff, Plaintiff's present counsel did believe that information had been uncovered which suggested that certain remains of the truck were located in Dickson, Tennessee. This fact was announced to the Court in conjunction with the ex parte presentation of Plaintiff's Motion for Leave to Conduct Discovery Prior to Rule 26(f) Conference on the day the Complaint was filed. Moreover, this information was revealed to the law firm representing Penske in this matter. However, shortly after Plaintiff's counsel thought he had information with respect to the location of some of the remains of the truck, Penske advised Plaintiff that the truck had been buried in multiple landfills. As such, Plaintiff's counsel concluded that any remains which may have existed in Dickson, Tennessee, in fact were not from the subject vehicle; thus no further thought was given to that information.

(Pl.'s Resp. to Penske's Mot. to Modify Sch. Order at 2.) This paragraph does not show that Benson knew of the existence of the truck remains in Spann's salvage yard before she filed the motion for default judgment.

After the order imposing sanctions had been entered and after scheduled mediation with Benson had failed, it took Penske five days to discover a portion of the lost evidence. Penske has offered no explanation for its inability to locate this evidence before the court imposed sanctions. The court cannot condone the actions of a party that suborns the destruction of evidence and then "discovers" a portion of that evidence only after sanctions have been imposed. Penske had control over the remains of the rented truck. Therefore, Penske alone is responsible for the fact that Benson has been prejudiced by the lack of a meaningful opportunity to inspect the

wreckage. Penske's motion for the court to reconsider its imposition of sanctions against Penske is denied.

### III. Conclusion

For the foregoing reasons, the court DENIES Defendant's motion for relief.

So ordered this 30th day of March 2006.

s/Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE